CITY OF ST. CHARLES, MISSOURI, a Municipal Corporation, Appellant, v. ST. CHARLES GAS COMPANY, a Corporation.—No. 38873.—185 S. W. (2d) 797.

Division Two, March 5, 1945.

*Robert V. Niedner* for appellant.

*Wm. Waye, Jr.,* for respondent.

1000

BARRETT, C.—In this action the City of St. Charles seeks to recover from the St. Charles Gas Company, for the second half of 1942, the five per cent license tax ($1,706.07) provided by Ordinance 1787. The trial court found that the city was not entitled to recover. This court has jurisdiction of the appeal because the constitutionality of the ordinance is presented. However, it is our view that the merit of the appeal lies in the preliminary question of the city's authority to enact such an ordinance applicable to this company.

The ordinance imposes a five per cent gross receipts tax on "Every person now or hereafter engaged in the business of supplying electricity, *gas*, telephone service or telegraph service, or water, for compensation *for any purpose* in the City of St. Charles."

When the ordinance was enacted in February 1942, the charter of cities of the third class (Mo. R. S. A., Sec. 6986) then provided that "The council shall have power and authority . . . to levy and collect a license tax and regulate . . . light, power and water companies, . . . " No other statutory authorization is claimed for the power to enact the ordinance.

The city admits that its charter, as it stood in 1942, does not specifically name or mention "gas" companies or business in its enumeration of the subjects of a license tax but contends, as a matter of fact, that the respondent gas company is a "light" company within the meaning of the charter and is therefore subject to the tax though not named in the charter. It is also argued that when the legislature authorized cities of the third class to levy a license tax on "light" companies it set up a genus of companies, and that any company capable of or supplying "light" was a company subject to be so taxed regardless of the manner in which it supplied "light" or illumination. In effect, the city contends that a "gas" company is a genus of "light" company within the meaning of its charter.

But, as to the latter point and in construing the city's charter, it must be kept in mind that a municipality possesses no inherent power to tax. If there is a doubt as to the delegation and existence of the power the doubt must be resolved against the city, as the state's delegation of the authority to tax must be clear. Ex Parte

1002

Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 416. Prior to 1889 there was no limitation, at least as to certain cities, on the occupations or pursuits, whether named or not, which the city might tax. Ex Parte Siemens v. Shreeve, supra. But since 1889 our statutes relating to municipalities have contained this delimitating declaration of policy (Ex Parte Lockhart, 350 Mo. 1220, 171 S. W. (2d) 660): 'No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute.'' Mo. R. S. A., Sec. 7440. This plain statutory declaration of policy is applicable to all cities and "it clearly places a limitation upon the power to tax occupations." Pierce City v. Hentschel (Mo.), 210 S. W. 31, 32. Unless the business or occupation is specifically enumerated as one subject to a license tax, the general rule is that the municipality has no authority to so tax it. Ex Parte Keane v. Strodtman, 323 Mo. 161, 18 S. W. (2d) 896; Ex Parte Siemens v. Shreeve, supra.

■ The exception or modification of the general rule is that if the occupation sought to be taxed clearly comes within the definition and meaning of the enumerated subjects or is in fact a genus of one of the named occupations, it may be subjected to the tax. For example, "a public mover" comes within a provision permitting a license tax upon the business of "transporting passengers, freight and merchandise for hire." Ex Parte Lockhart, supra. And, clearly, a five per cent license tax by the City of St. Charles on the "business of supplying electricity for any purpose" is authorized by the charter provision to tax "light, power and water companies," even though the company supplies electricity for heating and other purposes than illumination. ■ For, "Light and power has become recognized as a generic term describing companies which furnish electricity." Union Electric Co. v. City of St. Charles, 352 Mo. 1194, 181 S. W. (2d) 526, 528.

■ But in this case, it may not be said as a matter of law that "gas" comes within the definition of "light," as it appears in the charter, or, that a "gas" company is necessarily a genus of "light" company. In People's Gas & Fuel Co. v. Town of Ruston, 174 La. 485, 141 So. 36, the charter authorized a bond issue for "electric and gas light plants." The city proposed a bond issue for a "general gas public utility business." But the court said: "Authority conferred by the . . . Act upon a municipal corporation to own, operate, and maintain 'a gas light plant,' or a plant for gas lighting purposes, falls immeasurably short of the extraordinary power which defendant claims, in this case, to exercise for the purpose of engaging in a general public utility gas business, . . . "

■ As the city urges, in interpreting the charter, various rules for the construction of statutes are applicable and may be employed. As the contemporaneous construction of the charter by those charged with its enforcement, if it was so construed, may be entitled to some consideration. Automobile Gasoline Co. v. St. Louis, 326 Mo. 435, 443, 32 S. W. (2d) 281, 282. The fact that (before electricity was invented and in common use, and perhaps in 1917 when the clause in question was inserted in the charter), light was once furnished by gas companies might be of weight, in the absence of other circumstances. State ex rel. Laclede Gaslight Co. v. Murphy, 130 Mo. 10, 31 S. W. 594; City of St. Louis v. St. Louis Gaslight Co., 70 Mo. 69. So too the fact that the company is authorized to distribute gas for purposes of illumination may be considered, though the fact is not conclusive. Ex Parte Holman (Mo. App.), 191 S. W. 1109, 1111; State ex rel. Power Transmission Co. v. Baker, 330 Mo. 1146, 9 S. W. (2d) 589.

■ But even so the inference permitted by the application of all these rules of construction is outweighed by the plain statutory limitation that "No municipal corporation in this state shall have the power to impose a license tax upon any business . . . unless such business . . . is specially named." Especially is this true when it is considered that, by both prior and subsequent acts, the legislature has, at least by implication, construed this section of the city's charter. Hall v. Sedalia, 232 Mo. 344, 355, 134 S. W. 650, 652; Morgan v. Jewell Construction Co., 230 Mo. App. 425, 91 S. W. (2d) 638. The charters of cities of both the first and second class specifically include "gas companies" in their enumeration of the public utilities which may be subjected to license taxes. Mo. R. S. A., Secs. 6293(XVI), 6609(XVII). Furthermore, and despite the appellant's assertion to the contrary, the General Assembly, in 1943, amended the charter of cities of the third class with respect to license taxes by including "gas companies" in the specially named occupations subject to be so taxed. Laws Mo. 1943, pp. 701-703.

■ It must follow that unless the respondent gas company is, in fact, in the business of a "light" company there is no authority to subject it to the tax. The ordinance does not levy and it is not sought to collect a tax on that part of the company's income derived from the sale of gas for the purpose of lights only. The tax is on "gas . . . for any purpose" and it is urged that the company is in the business of furnishing gas for lights. Whether the company was in the business of furnishing gas for lights in 1942 depends, not upon its ability to do so nor upon its charter, but upon the facts and what the company as a matter of fact did. Just as the fact of what a rural telephone exchange or an office building equipped with electrical equipment does determines whether in fact they are public utilities. Compare: State ex rel. Mutual Telephone Co. v. Brown,

323 Mo. 818, 19 S. W. (2d) 1048; State ex rel. Danciger v. Public Service Comm., 275 Mo. 483, 205 S. W. 36; State ex rel. v. Public Service Comm. of Mo. (Mo. App.), 178 S. W. (2d) 788; Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984.

According to the evidence, the St. Charles Gas Company has been in business in St. Charles for many years. Though there is little, if any, evidence of the fact, it is likely that in 1917, and long before, the company furnished gas for lights as well as for cooking and heating. But in 1923 or 1924 the company changed its process of manufacturing gas. The change ▇▇▇ was from "coal gas" or the "destructive distillation of coal" to "carburetted water gas." And the latter process is not so suitable for lights and more suitable for cooking and heating. Since the change in process the company has manufactured and distributed artificial gas "for cooking, water heating and heating." The population of St. Charles is about 14,000 and there are from 3000 to 3500 homes in the city. The gas company has 2176 residential customers, 115 commercial or business customers, three industrial customers and one federal governmental agency or a total of 2295 customers. According to the company's evidence "stand by light" service was furnished one customer, the telephone company. That company used gas for lights when the electrical service failed for any reason and that occurred once or twice a year. Investigators for the city found gas light fixtures in about ten places in the city but only three or four of the fixtures were connected with gas lines so that they could be lighted. There were only one or two places in which the fixtures were equipped with mantles. All the fixtures had been installed many years ago. Electricity is available in St. Charles (Union Electric Co. v. City of St. Charles, supra) and practically everyone in the city, including the gas company, uses electricity for lights and there is no evidence that anyone actually and generally used gas for lights.

Thus, under the circumstances, it is obvious that the company is not habitually engaged in supplying gas for lights. State v. Barnes, 126 N. C. 1063, 35 S. E. 605. It is not in the business of furnishing gas for lights any more than a railroad shop equipped with electrical machinery used for lighting its shops is in the business of manufacturing electricity for sale. The railroad's primary and essential business is transportation and "regardless of what specific machinery might be used for, it is the use to which it is actually devoted that controls the purposes of taxation." Chicago, M., St. P. & P. R. Co. v. Custer County, 96 Mont. 566, 570, 32 Pac. (2d) 8, 9. Here there is no evidence that any substantial part of the company's business is manufacturing and supplying gas for lights. Its principal, primary and substantial business is that of a gas company, as such companies are now commonly known, furnishing gas for heating and cooking. Only an infinitesimal part of its business is that of a "light, power

. . . company." Consequently the respondent "gas" company is not in fact a light company within the meaning of the statute. State ex rel. Danciger v. Public Service Comm., supra; State ex rel. Mutual Tel. Co. v. Brown, supra; State ex rel. v. Public Service Commission of Mo., supra; Story v. Richardson, 186 Cal. 162, 198 Pac. 1057.

The occupation sought to be subjected to the license tax is not "specially named as taxable in the charter" and it is not, in fact, a "light" company or engaged in the "light" business as the word "light" is used in the charter. Consequently, the city had no authority, as its charter stood in 1942, to subject the respondent company to the license tax provided by Ordinance 1787 and the judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court. All the judges concur.